UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RANDY CREDICO, candidate of the Libertarian
Party and the Anti-Prohibition Party for the office
of United States Senator for the State of New York
(6-Year Term); MARK AXINN, as Chair and on
behalf of the Libertarian Party of New York, an
independent body, and individually; ANDREW
J. MILLER, as Chair and on behalf of the
Anti-Prohibition Party, an independent body, and
individually; and RICHARD COREY, a New York
resident and registered voter,

                          Plaintiffs,

        -against-

NEW YORK STATE BOARD OF ELECTIONS,
and JAMES A. WALSH, DOUGLAS A. KELLNER,
EVELYN J. AQUILA, and GREGORY P. PETERSON,
in their official capacities as Commissioners of the
New York State Board of Elections,

                          Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
10 CV 4555 (RJD) (CP)

DEARIE, Chief Judge.

      Under New York law, a political organization is defined as either a "Party" or "independent body." See Dillon v. New York State Bd. of Elections, 2005 WL 2847465, at *1 (E.D.N.Y. Oct. 31, 2005) (citing N.Y. Elec. Law § 1-104). A Party is a political organization whose gubernatorial candidate received at least 50,000 votes in the preceding gubernatorial election. N.Y. Elec. Law § 1-104.3. An independent body is a political organization whose gubernatorial candidate did not receive the requisite 50,000 votes. Id. at § 1-104.12.

      New York Election Law § 7-104.4 distinguishes between candidates who are nominated by more than one Party and candidates who are nominated only by more than one independent body. Pursuant to § 7-104.4(a), when a single political organization -- whether a Party or an

independent body -- nominates a candidate for United States Senate the candidate's name will appear on the ballot line that is reserved for that political party. When, however, the candidate is named by multiple political organizations, the placement of the candidate's name on the ballot turns on the legal status of the nominating political organizations. For example, when a candidate is nominated by more than one Party, his name will appear on the ballot line that is reserved for each Party. § 7-104.4(b). However, if a candidate is nominated only by more than one independent body -- and not by any Party -- his name will appear only once on the ballot. § 7-104.4(e). The candidate must designate the ballot line of one of the independent bodies that nominated him and his name, along with the name of the independent bodies that nominated him, will be placed on the line he designated. If the candidate does not designate a ballot line, the Board of Elections selects one for him.

Randy Credico is a candidate for the office of United States Senator for the State of New York of both the Libertarian Party of New York (the "Libertarian Party") and the Anti-Prohibition Party (the "APP"), in New York's upcoming general election on November 2, 2010. The Libertarian Party and the APP are both "independent bodies." On September 17, the New York State Board of Elections ("Board of Elections") notified Credico that, pursuant to § 7.104.4(e), he had to designate whether he wanted to be placed on the Libertarian Party or the APP ballot line. The notice further informed Credico that if he did not inform the Board of Elections of his designation by September 22, his name, along with the name of the Libertarian Party and the APP, would be placed on the ballot line reserved for the Libertarian Party. The space on APP's ballot line reserved for its Senator nominee where Credico's name would otherwise appear would be left blank. On September 22, Credico requested that the Board of

Elections place his name on the ballot line reserved for the Libertarian Party and on the ballot line reserved for the APP. The Board of Elections has refused to comply with his request.

Credico, the Libertarian Party, the APP and Richard Corey, a registered voter who desires to vote for Credico but will not do so if Credico is placed on the Libertarian Party's ballot line, filed this action on October 6 seeking, pursuant to 42 U.S.C. § 1983, a judgment declaring that § 7.104.4(e) violates their First Amendment and Fourteenth Amendment right of political affiliation and their Fourteenth Amendment right to equal protection (both facially and as applied to them). Currently before me is plaintiffs' motion for a preliminary injunction seeking an order: (1) enjoining the Board of Elections and its commissioners James Walsh, Douglas Kellner, Evelyn Aquila and Gregory Peterson (collectively, the "Commissioners") from implementing and enforcing § 7-104.4(e); and (2) directing the Board of Elections to place Credico's name on the ballot lines for both the Libertarian Party and the APP. Because I conclude that plaintiffs have demonstrated a clear or substantial likelihood of success on the merits of their claim that § 7-104.4(e), as applied to them, is unconstitutional, I grant their request for preliminary injunctive relief.[1]

## DISCUSSION

I. <u>Sovereign Immunity</u>

As an initial matter, the Board of Elections argues that plaintiffs' claims against it for declaratory and injunctive relief must be dismissed because it is entitled to sovereign immunity. I agree. The Eleventh Amendment bars a suit for injunctive relief against a state agency unless

---

[1] Plaintiffs moved for a temporary restraining order and preliminary injunction on October 6. The Court denied plaintiffs' request for a TRO on October 7, and ordered further briefing on plaintiffs' preliminary injunction motion. Oral argument on plaintiffs' preliminary injunction motion was held on October 19. I informed the parties on October 22 that plaintiffs' motion for preliminary injunctive relief had been granted and that a memorandum and order would be filed today.

3

Congress has clearly abrogated the state's immunity or the state has unequivocally waived its immunity. See McMillan v. New York State Board of Elections, 10 CV 2502 (JG), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). As Judge Gleeson recently determined in McMillan, the Board of Elections is a state agency for the purposes of the Eleventh Amendment, and Congress has not clearly abrogated New York's immunity and New York has not unequivocally waived it. Id. (citing Iwachiw v. New York City Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 Fed. App'x. 27 (2d Cir. 2005)). Nevertheless, plaintiffs' request for prospective injunctive relief is available against the Commissioners acting in their official capacities under the Ex Parte Young doctrine. See In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

II. Preliminary Injunction Standard

Before I may enjoin a "government action taken in the public interest pursuant to a statutory or regulatory scheme," I must be satisfied that plaintiffs have demonstrated that: (1) they are likely to suffer irreparable injury absent an injunction; and (2) they are likely to succeed on the merits of their claim. See Dillon v. New York State Bd. of Elections, 05 CV 4766, 2005 WL 2847465, at *3 (E.D.N.Y. Oct. 31, 2005). In addition, where, as here, plaintiffs seek an order that compels the Board of Elections to alter rather than maintain the status quo, I must be satisfied that the likelihood of success is "clear" or "substantial." Id. (internal quotation and citation omitted). See also Koppell v. New York State Bd. of Elections, 153 F.3d 95, 96 (2d Cir. 1998).[2]

---

[2] Plaintiffs argue that because defendants' "threatened actions lie far outside 'the public interest,'" I need only find that they have demonstrated that there are "sufficiently serious questions going to the merits" in order to grant their requested injunctive relief. Plaintiffs, however, offer no support for their position that the enforcement of an election law regulation

4

*A. Irreparable Injury*

The gist of plaintiffs' complaint is that the Board of Elections' refusal to place Credico's name on the ballot lines for both the Libertarian Party and the APP violates their First and Fourteenth Amendment rights to fully express their political association with the parties or candidates of their choice (as the case may be). Plaintiffs also complain that their rights to equal protection under the Fourteenth Amendment have been violated because while § 7.104.4(e) limits Credico's name to being placed in only one space on the ballot, no such limitation is placed on candidates who receive the nomination of two or more Parties.

"All election laws necessarily implicate the First and Fourteenth Amendments," Dillon, 2005 WL 2847465, at *3, and whether a challenged regulation "governs the registration and qualification of voters, the selection and eligibility of candidates, or the voting process itself, [it] inevitably affects – at least to some degree – the individual's right to vote and his right to associate with others for political ends." Price v. New York State Bd. of Elections, 540 F.3d 101, 107-08 (2d Cir. 2008) (quoting Anderson v. Celebrezze, 460 U.S 780, 788 (1983)). Because "[v]iolations of First Amendment rights are commonly considered irreparable injuries," I have no trouble concluding that plaintiffs have established that, in the event the injunction is not granted, they will suffer an irreparable injury. See Dillon, 2005 WL 2847465, at *3 (internal quotation and citation omitted).

*B. Substantial or Clear Likelihood of Success on the Merits*

I also conclude that plaintiffs have demonstrated a clear or substantial likelihood of success on the merits of their constitutional claims. While it is true that all election laws

---

lies far outside the "public interest," and in light of the Second Circuit's use of the heightened standard in election law cases, I decline to adopt the more lenient standard.

implicate First Amendment associational rights, "it is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997). Thus, "not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir. 2006) (quoting Bullock v. Carter, 405 U.S. 134, 143 (1972)). Likewise, while the Equal Protection Clause of the Fourteenth Amendment prohibits "invidious distinctions" that grant "established parties a decided advantage over any new parties struggling for existence," Dillon, 2005 WL 2847465, at *4 (quoting Williams v. Rhodes, 393 U.S. 23, 30-31 (1968)), state legislatures are given "considerable leeway to enact legislation that may appear to affect similarly situated people differently." Id. (citing Clements v. Fashing, 457 U.S. 957, 962-63 (1982)).

Where, as here, the challenged election laws purport to place burdens on the associational rights of only minor political parties, the First Amendment and equal protection challenges "tend to coalesce," so that the analyses of the claims "substantially overlap." Dillon, 2005 WL 2847465, at *5 (internal citation omitted). Thus, in determining the constitutionality of a state's electoral regulations, I must apply a balancing test. First, I must weigh the severity of the burdens placed on plaintiffs' associational rights against the state's interests in the challenged provisions. If I conclude that the burdens placed on plaintiffs are "severe," heightened scrutiny applies, and the state must establish that the regulation is narrowly drawn to advance a compelling interest. If I conclude that the burdens are reasonable and non-discriminatory, the state's important interest in regulating its election scheme is usually sufficient. See New Alliance Party v. New York State Board of Elections, 861 F. Supp. 282, 294 (S.D.N.Y. 1994); see also Dillon, 2005 WL 2847465, at *4 (citing Burdick v. Takushi, 504 U.S. 428, 434 (1992)).

Consistent with the Supreme Court's ruling in Timmons and its progeny, I conclude that the burdens placed on plaintiffs' associational rights by the ballot limitations imposed by § 7.104.4(e) are -- though not trivial -- not severe. To be sure, § 7-104.4(e) reduces Credico's prominence on the ballot vis a vis candidates for the Parties. But the Supreme Court has stated that "[b]allots serve primarily to elect candidates, not as forums for political expressions," Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 453 n.7 (2008) (quoting Timmons, 520 U.S. at 362-63), and that merely because a "particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." Timmons, 520 U.S. at 359 (citing Burdick, 504 U.S. at 440, n.10). Credico has not been removed from the ballot, and he is not prevented from educating his supporters -- to the extent that they are unaware -- that he retains the nomination of both independent bodies. Nor are the Libertarian Party and APP prohibited from continuing to endorse Credico and campaigning on his behalf. Under the circumstances, plaintiffs' burdens are not severe. See Timmons, 520 U.S. at 363 (holding that Minnesota law that prohibited cross-nomination by political parties -- though not trivial -- did not severely burden minor party's First Amendment associational rights).

That the plaintiffs' associational rights will be severely burdened, however, does not end my inquiry. As the Second Circuit recently instructed in Price, while "review in such circumstances will be quite deferential," I must actually "weigh the burdens imposed on the plaintiff against the precise interests put forward by the State" and "take into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights," Price, 540 F.3d at 108-09 (emphasis added). Price directs me to conduct more than just a rational basis review,

7

and I am not to give much weight to "flimsy" or "extraordinarily weak" justifications proffered by the State. Id. at 111.

The Board of Elections argues that, by furthering New York's interest in ensuring an orderly and comprehensible ballot, § 7.104.4(e) justifies the burdens placed on plaintiffs' associational rights. Specifically, the Board of Elections argues that § 7.104.4(e) supports New York's "full face" requirement, i.e., New York's requirement that the entire ballot be exhibited on New York's optical scan voting systems, by limiting the number of ballot lines when candidates receive multiple cross-nominations.

*Under the circumstances of this case*, however, I conclude that New York's asserted interest carries no weight as a justification. New York's interest in limiting the number of lines on the ballot cannot be the legitimate reason for denying Credico's request because the APP's line will be on the ballot anyway.[3] Therefore, enforcement of the statute in these circumstances would, as Judge Gleeson noted in Dillon, produce the "anomalous" result of a blank space on APP's ballot line where Credico's name would otherwise appear. See Dillon, 2005 WL 2847465, at *7 (identifying the "absurd result" that enforcement of § 7.104.4(e) would produce in the instant situation). At least one state court has seen it the same way. Cf. Sherwood v. New York State Bd. of Elections, 17 Misc. 3d 922, 926, 847 N.Y.S. 2d 428 (N.Y. Sup. Ct. Oct. 16, 2007) ("Where the independent body's line already exists, the leaving of a blank box in the column of petitioner would be nonsensical"). New York has not shown me what legitimate interest it might have in maintaining a blank space in an existing ballot line, resorting only to its general, and quite understandable, interest in seeing state laws enforced, to the letter, as written.

---

[3] The APP has nominated a gubernatorial candidate and will therefore, pursuant to New York Election Law § 7.104.5, have a line on the ballot notwithstanding the Board of Elections' refusal to place Credico's name on its line.

8

But to accept that rationale and nothing more would be tantamount to a categorical rejection of any "as applied" challenge.

I further conclude that, *under the circumstances,* enforcement of § 7.104.4(e) would create a more -- not less -- confusing ballot for voters. For example, while supporters of the Libertarian Party will see only the names of their party's nominees for governor, comptroller and attorney general in the assigned spaces for those positions on the Libertarian Party's ballot line, when they get to the space on the Libertarian Party's ballot line for U.S. Senator they will see Credico's name and both the Libertarian Party and the APP names. While I do not believe that the confusion among Libertarian Party supporters is likely to be significant, the Board of Elections has afforded me no legitimate justification for causing or increasing such confusion, and in any event, any confusion can be eliminated entirely by placing Credico's name on the ballot lines for both the Libertarian Party and the APP. As for the APP's supporters, I do believe that there is the possibility that a significant number of them will be confused by the ballot. Expecting to see Credico's name on the APP's line along with the APP's other nominees, the APP's supporters will instead see a blank space where Credico's name should appear, and they might understandably infer that Credico is no longer on the ballot. Any potential confusion among these supporters can be eliminated entirely by placing Credico's name on the APP's ballot line.

The Board of Elections also argues that plaintiffs' failure to bring this lawsuit sooner has resulted in the "election apparatus" being "too far advanced to change the format of the ballot statewide" in time for the November 2, 2010 election. While I appreciate the time-sensitive nature of finalizing the ballot in time for the upcoming election, I am not convinced that it is, as counsel for the Board of Elections argues, "extremely difficult, if not impossible" at this juncture

to add Credico's name to an empty space on a line that already exists on the ballot. My skepticism is fueled in part by the Board of Elections' failure to submit affidavits or offer sworn testimony detailing the reasons why a change to the ballot is not possible as election boards routinely do when faced with a lawsuit filed close to election day. That the Board of Elections has not done so here suggests to me that adding Credico's name to an empty space on an existing ballot line is not an impossible task at this juncture.[4]

## CONCLUSION

For the foregoing reasons, I conclude that under the circumstances, the burdens imposed on plaintiffs' important First Amendment and Fourteenth Amendment rights of political affiliation outweigh New York's asserted interest in enforcing § 7.104.4(e). Accordingly, I grant plaintiffs' motion for preliminary injunction. The Commissioners are hereby enjoined from enforcing New York Election Law § 7.104.4(e), and I direct them to certify the ballot in the November 2, 2010 general election so that Randy Credico's name is placed on the ballot lines for both the Libertarian Party and the APP.

SO ORDERED.

Dated: Brooklyn, New York
October 25, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[4] Counsel for the Board of Elections represented at oral argument that his client has informed him that due to New York's recent switch from lever voting machines to optical scan voting systems, New York will not be able to test its election software in time to ensure the new voting system's reliability and accuracy. I do not doubt counsel's veracity in conveying his client's representation. Nevertheless, absent a sworn affidavit or testimony, I remain unconvinced of the Board of Elections' position that adding Credico's name to the ballot is impossible.

10