

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL

October 26, 2010

**By ECF**
The Honorable Raymond J. Dearie
Chief Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Credico v. N.Y. State Bd. of Elections*, 10 Civ. 4555 (RJD) (CLP)

Dear Judge Dearie:

This letter is submitted in opposition to plaintiffs' proposal, made for the first time during the proceedings in this Court this afternoon, that the Court order the following supplemental voting instruction to be posted in the 6,000 polling sites across New York State:

> **PLEASE TAKE NOTICE** that Randy A. Credico, candidate for United States Senate (6-year term), appears on the ballot only on Line or Column H (for the Libertarian Party), although he is also a candidate for that office of the Anti-Prohibition Party (whose other candidates appear on Line or Column I). All votes cast for Mr. Credico will be counted as votes for both independent bodies.

The balance of the equities weighs strongly against ordering this proposed supplemental instruction for the following reasons:

    1.    *The proposed supplemental voting instruction would threaten the integrity of the electoral process and disadvantage other candidates and political*

Page 2

*parties.* Posting the supplemental instruction would unfairly call voters' attention to Mr. Credico immediately before they vote, to the detriment of other candidates in the contest for United States Senate. To protect the integrity of the electoral process, New York Election Law § 8-104(1) prohibits electioneering in or within 100 feet of any polling place while the polls are open and states that "no political banner, button, poster or placard" shall be allowed in or within 100 feet of the polling place.[1] The proposed instruction would essentially permit Mr. Credico to circumvent this statutory prohibition.

The unfairness of the proposed instruction extends beyond the contest for United State Senate in which Mr. Credico is a candidate. The proposed instruction calls voters' attention to the Anti-Prohibition Party generally and to the line on the ballot containing that party's candidates for other offices. The other candidates and political parties affected have had no opportunity to be heard in this matter. The unfairness and threat to electoral integrity that would result from a supplemental instruction specifically highlighting a single candidate and party are far out of proportion to the alleged injury for which plaintiffs seek redress.

---

[1] A supplemental instruction highlighting Mr. Credico's name and party also violates the spirit of Election Law § 7-104(1), which standardizes the form of ballots and requires that names of candidates and their nominating organizations be printed in uniform size and style. *See Walsh v. Lomenzo*, 57 Misc.2d 1082, 1085 (Sup. Ct., N.Y. County 1968) ("The ballot shall furnish to each Elector a reasonable, fair and equal opportunity to express his choice, by having all names printed in the same style under the same appropriate headings"); *Methfessel v. Heffernan*, 191 Misc. 432, 432-33 (Sup. Ct., N.Y. County 1947) (ordering that voting machine strips identifying thirteen candidates in capital letters and three candidates in lower case letters had to be replaced with new strips identifying all candidates in the same form of type, so as to not advantage or disadvantage any candidate).

2. *Implementing an order for a supplemental instruction to be posted at New York's 6,000 polling sites at this late date would present serious logistical challenges and cause confusion.* In an October 15 decision in *Conservative Party v. New York State Board of Elections*, No. 10 Civ. 6923 (S.D.N.Y., Oct. 15, 2010) (attached), Judge Rakoff of the United States District Court for the Southern District of New York denied two political parties' request for relief similar to that sought here, citing the confusion such an order would cause. In that case, the plaintiffs sought a preliminary injunction ordering the posting of signs in voting booths warning voters against double-voting (voting for the same candidate on more than one ballot line). In denying the relief, Judge Rakoff emphasized "the obvious potential for confusion created by a change that would have to be made on such short notice and without adequate training of personnel, and the simple fact that plaintiffs waited until six weeks before the election to file their complaint." *Id.* at 5.[2]

Plaintiffs' request for a supplemental instruction comes even closer in time to the election than the request for signs in the *Conservative Party* case and poses equally daunting challenges for state and county boards of elections. An order for a supplemental instruction would be very difficult to implement in the remaining days before the election and would cause confusion because the thousands of poll

---

[2] The proposed signs in that case would not have identified any particular candidate or political party and so would not have posed the electioneering concern discussed above.

workers who would ultimately be responsible for implementing the order could not be adequately trained.

For a supplemental instruction to be posted in the 6,000 polling places across New York State, notices containing the instruction would have to be printed and materials instructing poll workers precisely where to post the supplemental instruction would have to be prepared and printed. (Federal law would require the instruction to be translated into Spanish, Chinese, and Korean for polling places in New York City and to be translated into Spanish for certain other polling places also.) The notices and other materials would have to be delivered to all polling places in the State for posting. Virtually all county boards, which are the entities responsible for running elections under state law, have already packed election supplies for delivery and have begun delivering election supplies and optical scanners to polling sites. The logistical challenges and potential for confusion that would accompany any effort to add a supplemental voting instruction at this late date are further reasons to deny plaintiffs' request.

3. *The second sentence in the proposed instruction would mislead and confuse voters.* Plaintiffs' proposed instruction states, in its second sentence, that "[a]ll votes cast for Mr. Credico will be counted as votes for both independent bodies." This statement incorrectly suggests that there is some legal significance to the number of votes cast for a particular party's candidate in the U.S. Senate

contest. In fact, while there are consequences to the number of votes cast for a party's candidate in certain contests, the contest for U.S. Senate is not one of them.

New York election law distinguishes between a "party" and an "independent body," generally affording parties greater rights under the law. *See, e.g.*, Elec. Law art. 6 (providing a process for parties to conduct primaries). A political organization's status as a "party" or "independent body" is determined by the number of votes the organization's candidate received in the preceding election *for Governor*. *See* Elec. Law § 1-104(3), (12). The number of votes an organization's candidate for Governor receives also affects ballot placement and other matters. In addition, the number of votes received by an organization's candidate for State Senate or State Assembly has consequences for internal party governance. The number of votes an organization's candidate for U.S. Senate receives has no such consequences. Consequently, the second sentence in the proposed instruction would only mislead and confuse voters.

For these reasons, plaintiffs' request for an order requiring the posting of a supplemental voting instruction should be denied.

Respectfully submitted,

*Barbara D. Underwood*

Barbara D. Underwood
Solicitor General
*Counsel for Defendants*

cc: Counsel of record (via ECF)

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CONSERVATIVE PARTY OF NEW YORK STATE    :
and WORKING FAMILIES PARTY,             :
                                        :
                Plaintiffs,             :
                                        :
        -v-                             :
                                        :   10 Civ. 6923 (JSR)
NEW YORK STATE BOARD OF ELECTIONS;      :
JAMES A. WALSH, DOUGLAS A. KELLNER,     :
EVELYN J. AQUILA, and GREGORY P.        :
PETERSON, in their official             :   MEMORANDUM ORDER
capacities as Commissioners of the      :
New York State Board of Elections;      :
TODD D. VALENTINE and ROBERT A.         :
BREHM, in their official capacities     :
as Co-Directors of the New York State   :
Board of Elections                      :
                                        :
                Defendants.             :
------------------------------------- x
```



JED S. RAKOFF, U.S.D.J.

On September 14, 2010, plaintiffs the Conservative Party of New York State and the Working Families Party filed a complaint challenging Section 9-112(4) of the New York Election Law and the policy thereunder regarding so-called "double-votes."[1] A "double-vote" is cast when a candidate accepts the nomination of more than one political party and the voter improperly votes for that candidate on

---

[1] See N.Y. Elec. Law § 9-112(4) ("If, in the case of a candidate whose name appears on the ballot more than once for the same office, the voter shall make a cross X mark or a check V mark in each of two or more voting squares before the candidate's name, or fill in such voting squares or punch out the hole in two or more voting squares of a ballot intended to be counted by machine, only the first vote shall be counted for such candidate.")

multiple party lines. While it is clear which candidate the voter intended to support, it is not clear which party should be credited with the vote. In this situation, New York Election Law § 9-112(4) provides that the vote is counted towards the first party on the ballot, almost invariably one of the major parties. Plaintiffs, which are minor political parties hoping to garner as many votes as possible, allege that this practice violates the First and Fourteenth Amendments of the United States Constitution.

On October 1, 2010, plaintiffs filed a motion for preliminary injunction based on their belief that the harms allegedly associated with this purportedly unconstitutional practice would be magnified in the upcoming election because of the transition to electronic voting machines and the corresponding programming.[2] Plaintiffs therefore sought injunctive relief that, among other things, would have required reprogramming of the machines. Although the Court set an evidentiary hearing for October 20, 2010, defendants filed papers seeking to have the Court first deny the request for preliminary injunction, without a hearing, on numerous grounds, including, inter alia, the indication that reprogramming the machines at this late date would present very

---

[2] In prior elections, the lever voting machines used in most places did not physically allow a voter to pull two levers for any office, and it was therefore impossible for a voter to double-vote for a single candidate on more than one party line. The new electronic voting machines, however, do not similarly prevent voters from casting double-votes.

2

considerable practical difficulties. At the second in-court conference held on this matter on October 12, 2010, plaintiffs, without admitting that such difficulties were insurmountable, then reduced their request for preliminary relief to the more modest remedy of posting warning signs against double-voting at each election booth.

In response to this reduced proposal, defendants argued that finding appropriate wording for such a sign would be difficult,[3] and that, even then, obtaining the Justice Department-approval required in certain districts, determining how such signs should be placed, and training poll watchers to deal with the questions such signs would inevitably engender would present serious practical difficulties. Defendants also argued, both orally and in their papers, that plaintiffs were on notice of the allegedly improper practice arising from counting a double-vote for the first party listed because it is set forth in the first sentence of the statute, see New York Election Law § 9-112(4), and plaintiffs thus had no legitimate reason for delaying their motion for injunctive relief until the eve of the election.

The question now before the Court, therefore, is whether the plaintiffs have provided sufficient basis for moving forward with the evidentiary hearing scheduled for October 20, 2010, or whether their request for preliminary relief should be denied as a matter of law.

---

[3] The Court has not yet received a copy of plaintiffs' proposed language.

3

Having carefully reviewed all the arguments of counsel, the Court finds that while plaintiffs have set forth substantial arguments in favor of their underlying complaint, the Court cannot conclude at this stage that they have established by the requisite evidence either that they in fact have a likelihood of prevailing on the merits or that the harm that would follow if the injunction were not granted would be other than de minimis. Moreover, because they seek not just to preserve the status quo but rather to require a government agency to alter it in the face of a contrary statute, their burden is particularly high. See, e.g., Bery v. City of New York, 97 F.3d 689, 694 (2d Cir. 1996), cert. denied 520 U.S. 1251 (1997); Bronx Household of Faith v. Board of Educ., 331 F.3d 342, 348-49 (2d Cir. 2003); Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004).

But the Court need not reach the merits at this time because it agrees with defendants that plaintiffs have slept on their rights and cannot at this late date seek the kind of onerous and potentially confusing relief envisioned by even their more restricted proposal, absent a showing greater than any they would be able to present even with the benefit of an evidentiary hearing. The manner in which the State handles double-voting is, as mentioned, a matter of statute, and a political party as assiduous as the Conservative Party with long experience in New York elections is surely on notice of this

4

provision.[4] There is no good reason, therefore, for plaintiffs to bring this request for injunctive relief now when, because of the imminence of election, all the potential harms postulated by the defendants are at their maximum.

Under these circumstances, and taking account of the speculative nature of the harm that plaintiffs claim they could prove at an evidentiary hearing, the obvious potential for confusion created by a change that would have to be made on such short notice and without adequate training of personnel, and the simple fact that plaintiffs waited until six weeks before the election to file their complaint, the Court will not invoke the extraordinary remedy of a preliminary injunction at this time. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Consequently, the motion for a preliminary injunction is denied so far as the instant election is concerned, without prejudice to this case going forward in all other respects, including with respect to injunctive relief in future elections.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
October 15, 2010

---

[4] The suggestion in the Declaration of Daniel Cantor that he received conflicting advice about this matter when he first inquired about it last July is irrelevant. The first sentence of the statute is clear and unambiguous.

5