## DAI & ASSOCIATES, P.C.

戴 上 律 师 事 务 所

**ATTORNEYS AT LAW**

Queens Crossing Business Center
136-20 38th Avenue, Suite 9F
Flushing, New York 11354
Telephone: (718) 888-8880
Facsimile: (718) 888-9270

SHANG DAI*
JOHN J. O'CONNELL*
GEORGE W. CLARKE*
DAWEI GONGSUN*
GARY L. DONOYAN*
YUXIA ZHANG*
THOMAS LAI ‡
XIAOLE ZHANG ‡
SHENGMING SHI§
SHIYONG YE Δ

OF COUNSELS
ALLAN BERLOWITZ
CHARLES H RUBENSTEIN
RICHARD A. ROTH
PAUL H. SCHIETROMA
JOHN R.PARKER
JD KIM

*ADMITTED IN NY
‡ADMITTED IN NY& NJ
§ADMITTED IN NY &P.R.CHINA
Δ ADMITTED IN NY& MA

October 27, 2010

By ECF Only
Hon. Raymond J. Dearie
Chief Judge
United States District Court for the Eastern District of New York
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, New York   11201

RE:   Credico, et al. v. New York State Board of Elections, et al.
      Docket No. 10-Civ. 4555 (RJD) (CLP)
      U.S. District Court, E.D.N.Y.

Dear Judge Dearie:

On October 6, 2010, plaintiffs commenced this action, and moved this Court for a temporary restraining order and a preliminary injunction, to direct defendants to place the name of plaintiff Randy Credico on the statewide ballot on the lines (or columns) of both the Libertarian Party, and the Anti-Prohibition Party, rather than on just one line or column, as provided in N.Y. Elec. L. §7-104(4)(e).   Although the TRO was denied, the Court, after considering the parties' submissions and oral argument, granted plaintiffs a preliminary injunction, providing notice of the decision by telephone on October 22, and issuing a

written decision on October 25, 2010 (the "October 25 Decision").   Upon request by letter by defendants, the Court stayed enforcement of the injunction, pending a conference the following day.   At the conference on October 26, the Court confirmed the stay of enforcement of the injunction, and also considered plaintiffs' application for alternative relief, in the form of a notice proposed to be posted at the voting locations across the state, as follows:

> **PLEASE TAKE NOTICE** that Randy A. Credico, candidate for United States Senate (6-year term), appears on the ballot <u>only</u> on Line or Column H (for the Libertarian Party), although he is also a candidate for that office of the Anti-Prohibition Party (whose other candidates appear on Line or Column I).   All votes cast for Mr. Credico will be counted as votes for <u>both</u> independent bodies.

The Court requested a written submission by defendants on the issue in the evening of October 26, and a response by plaintiffs thereafter.   This letter is submitted in support of plaintiffs' proposed alternative relief, and in response to the letter of Solicitor General Barbara D. Underwood, Esq., counsel for defendants, dated October 26, 2010.

1.   <u>Defendants' Constitutional Violation Requires a Remedy</u>

Defendants suggest that posting plaintiffs' proposed notice (the "Notice") "would unfairly call voters' attention to Mr. Credico immediately before they vote, to the detriment of other candidates in the contest for United States Senate."   But, the Court has already ruled that the existing layout of the statewide ballot, as regards the candidates for United States Senate (6-year term), likely violates the constitutional rights of plaintiffs, in that, <u>inter alia</u>, it violates the equal protection clause of the 14th Amendment.   Although that violation was brought to defendants' attention by plaintiff Randy Credico himself, by letter dated and faxed September 22, 2010 (see Complaint, Exhibit 2), defendants declined to correct that violation at a time when it was still possible to do so.   The result, of course, is

a "detriment" to Mr. Credico <u>in relation to the other candidates</u> in the contest for that elected office. Any possible effective remedy, therefore, would <u>necessarily</u> be "to the detriment of other candidates in the contest for United States Senate." Indeed, that is exactly the point and purpose of plaintiffs' entire motion, and entire case. Similarly, defendants claim that nothing should "unfairly call voters' attention to Mr. Credico immediately before they vote." But the layout of the existing ballot "unfairly" <u>reduces</u> voters' attention to Mr. Credico immediately before they vote. Defendants' current claims demonstrate that they lack appreciation for the extent of harm they have likely caused plaintiffs by their enforcement of N.Y. Elec. L. §7-104(4)(e), as already found by this Court.

In their footnote 1, defendants refer to N.Y. Elec. L. §7-104(1) "which standardizes the form of ballots and requires that names of candidates and their nominating organizations be printed in uniform size and style." Defendants claim that plaintiffs' proposed notice "violates the spirit of Election Law §7-104(1)." But two of Credico's opponents are provided with multiple lines on the statewide ballot, while Credico is <u>unconstitutionally</u> (as claimed by plaintiffs and found likely by the Court) limited to one line. Some remedy must be afforded, and what plaintiffs propose violates neither the letter nor the spirit of §7-104(1).

With reference to a different provision of New York Election Law raised by defendants, the Notice can not be construed as "electioneering" by any stretch of the imagination. It consists of two declaratory sentences, and contains no suggestions or opinions whatsoever. Similarly, by no means can the Notice be described as a "political banner, button, poster or placard." The problem caused by defendants and being

addressed by plaintiffs is candidate-specific and organization-specific, and therefore identification of the candidate and organizations at issue is unavoidable.

Of course the proposed notice "specifically highlight[s]" a single candidate, and the independent body on whose line his name does not appear. To remedy the specific and unconstitutional <u>deemphasis</u> of a particular candidate and a particular independent body by defendants, <u>only</u> a "specific highlighting" will suffice. Overall, giving defendants the benefit of the doubt, they appear utterly to fail to recognize the nature of the harm their enforcement of §7-104(4)(e) is about to cause to all plaintiffs.

2. <u>The Conservative Party Case is Clearly Distinguishable</u>

Defendants rely on the recent decision in <u>Conservative Party v. NYSBOE</u> (10 Civ. 6923, S.D.N.Y. 2010) denying a motion for a preliminary injunction, to support their claims herein. The relief sought in the <u>Conservative Party</u> case was the posting of "warning signs against double voting" at each election booth. Such signs are not "similar" to a notice regarding the party affiliation of a single candidate. The request for that relief was denied on the ground, among others, that no showing had been made of a likelihood of success on the merits, unlike in the instant case.

The "challenges" for the state and county boards of elections posed by plaintiffs' request, if any, are certainly less "daunting" than the challenges faced as a result of the request in <u>Conservative Party</u>. For one thing, defendants need not "find[ ] appropriate wording for such a sign," as it has already been spelled out in the Notice. Secondly, plaintiffs are unaware of any requirement that "Justice Department-approval" is necessary for the placement of the Notice, and defendants have not alleged that it would be required in this case. Thirdly, there would be no need to "train[ ] poll watchers to deal with the

questions such signs will inevitably engender," since the Notice is virtually self-explanatory.

Finally, unlike in Conservative Party, the only "implementing the order" to be done by "poll workers" would be the placement of the Notice at a location visible to voters, either in the booths themselves or elsewhere. The details of its placement could be left to defendants, and the "training" required for such placement of the Notice could not possibly be extensive.

3. It Is True, Clear and Useful to Suggest that Votes for Credico Will Be Counted As Votes for Both Independent Bodies

Defendants suggest that the second sentence in the Notice is "incorrect." First of all, the second sentence in the Notice suggests nothing about the "legal significance" of any vote or votes. Secondly, there is, in fact, some significance to the number of votes cast for a particular party's candidate even in the U.S. Senate contest. For example, if the winning candidate obtained a plurality of votes only due to the existence of more than one line, those parties (or independent bodies) which provided the candidate's margin of victory can rightly claim and expect to have more influence with that candidate during that term of office. Also, information about the demographics of the major and minor parties may be obtained by examining the breakdown of votes received by any one candidate, on his or her several lines, even in the U.S. Senate contest.

Although there are legal "consequences" due to the number of votes received by an organization for its candidates for Governor, State Senate and State Assembly, that does not lead to the conclusion that the breakdown of the votes cast for candidates for other offices are inconsequential. As noted above, there are at least two significant purposes that may be achieved as a result of the separate delineation of votes when more than one

organization places a candidate on the ballot. Whether or not voters are aware of those legal consequences, or the lack of legal consequences, or the other potential purposes, the second sentence in plaintiffs' proposed notice is factually correct, and would certainly not "mislead" or "confuse" voters.

The New York regime of laws with regard to fusion voting provides for multiple lines for a single candidate, even for races other than those with "legal" significance. Plaintiffs have not argued that those laws serve no purpose in service of the public, but as suggested in earlier papers, such an argument might be made. Nevertheless, for the purposes of the instant motion, plaintiffs accept the validity of those laws, and defendants should therefore not be heard to complain that plaintiffs wish to refer to those laws, in a notice to be seen by the voters.

In support of their position that it is too late to change the face of the ballot, and/or the programming of the optical scanners, defendants presented numerous factual allegations, in the form of declarations under the penalties of perjury, and as a result, plaintiffs will not obtain the relief they would otherwise be entitled to under the constitution. By contrast, defendants have not presented a compelling argument that the alternative relief requested by plaintiffs should not be granted, under the extraordinary circumstances herein where a preliminary injunction for full relief has actually been granted, but stayed due to defendants' claim of impossibility. Virtually none of their factual allegations of impossibility are applicable to defendants' new claim that they are also not able even to provide plaintiffs with the simple, alternative relief they now seek, and defendants' legal objections tend, in essence, to reveal their lack of appreciation of their own responsibility for plaintiff's admittedly ephemeral damages.

This Court has the power to remedy the harm done to plaintiffs by defendants' deprivation of their constitutional rights. The solution proposed by plaintiffs is well within the bounds of what this Court may do to protect plaintiffs' rights without undue harm to any other interest. In sum, there is no basis for denying plaintiffs the alternative relief they now seek.

For all of the above reasons, plaintiffs' request for alternative relief, in the form of an order requiring defendants to post the Notice at every voting location across New York during voting hours on November 2, 2010, should be granted.

Respectfully submitted,

Gary L. Donoyan (GD-7542)
Dai & Associates, P.C.
Attorneys for plaintiffs

cc:   all parties (via ECF)